

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 27, 2013**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| OSMAN JAVIER GARCIA and | § | CASE NO. 11-41094-rfn-13 |
| ELIA MERCEDEZ MARTINEZ, | § | |
| | § | |
| **Debtors.** | § | |

## MEMORANDUM OPINION

The debtors sold their homestead after filing for bankruptcy under chapter 13. More than six months passed after the sale and the debtors did not reinvest the proceeds in another homestead. The debtors have moved to modify their plan to permit them to keep the proceeds.

The trustee objects to the plan modification. He argues that the proceeds are no longer exempt, and so the modified plan must provide for their distribution to unsecured creditors. The debtors argue that the homestead proceeds are exempt because their homestead exemption became final when no party timely objected to their claim of exemption. They say that the effect of the exemption is to forever withdraw the homestead and its proceeds from the estate.

1

Alternatively, they argue that the trustee's objection is barred by *res judicata* because he failed to lodge his objection when the debtors sought this court's authority to sell the homestead.

The court concludes that (1) the homestead proceeds lost their exempt status after six months from the date of sale and (2) the trustee's objection is not barred by *res judicata*. The plan modification must be denied.[1]

## FACTS

The debtors filed a chapter 13 case in February 2011. Upon filing, they claimed an exemption under section 41.001(a) of the Texas Property Code for their homestead in Fort Worth, Texas. No party objected to the exemption and it became final on May 8, 2011.

The court confirmed a plan that required the debtors to pay $750.00 per month to the chapter 13 trustee. While most of this amount was directed to the reduction of pre-petition arrearages on the debtors' homestead, a small portion was to be distributed to unsecured creditors.

In September 2012 the debtors moved for authority to sell their homestead. In the motion, the debtors disclosed that the sale would net approximately $64,000, less certain additional expenses. The debtors claimed the proceeds as exempt and proposed that all equity be distributed to them. No party, including the chapter 13 trustee, objected to the motion. Instead, the trustee, the mortgage company and the debtors entered into an agreed order of sale. In the order the court approved the sale and ordered that the net proceeds "be disbursed to the Debtor(s) as their exempt equity in the home." The debtors closed on the sale of their homestead sometime

---

[1] The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 151 and the standing order of reference in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). This memorandum opinion constitutes the court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

in November 2012. While there is no evidence in the record of what the debtors did with the proceeds, they concede the proceeds were not used to purchase a new homestead.[2]

Because the debtors' plan included monthly payments to reduce pre-petition mortgage arrearages and those arrearages were satisfied in full by the sale of their homestead, the debtors moved to modify their plan. As part of the modified plan, the debtors propose to keep the $64,000 in homestead proceeds.

The trustee objects to the proposed modification, arguing that it violates 11 U.S.C. § 1325(a)(4) because it fails to provide for the distribution of the amount of the homestead proceeds to unsecured creditors. The debtors contend that the proposed modification complies with section 1325(a)(4) because the proceeds are exempt and need not be accounted for in satisfying the best interests test. Moreover, they say that even if the plan modification does not satisfy the best interests test, they should still prevail because the trustee's objection is barred by *res judicata* due to his failure to object to their retention of the proceeds in connection with the sale motion.

---

[2] The absence of any evidence regarding the debtors' use of the proceeds in the six months following the sale avoids for the time being the question of whether the debtors can gain approval of any plan modification. If the debtors have kept all of the proceeds, no such issue arises. But, if the debtors have used some or all of the proceeds, the question arises as to whether the debtors must propose a plan modification that includes all proceeds or just those available on the date of the plan modification. *Compare, e.g., In re Zibman,* 268 F.3d 298, 305 (5th Cir. 2001)(holding that the object of the proceeds exemption statute is solely to allow the claimant to invest the proceeds in another homestead), and *Hill v. Jones (In re Jones),* 327 B.R. 297, 302 (S.D. Tex. 2005)(holding that the proceeds exemption is solely to allow purchase of a new home and cannot be used to make other purchases), *with Lowe v. Yochem (In re Reed)*, 184 B.R. 733, 738 (Bankr. W.D. Tex. 1995)(holding in the chapter 7 context that the debtor is free to do what he pleases with his homestead proceeds) and *London v. London,* 342 S.W.2d 768, 773, 775 (Tex. App Houston—14th Dist., 2005, writ den'd)(holding that the Texas Property Code "does not contain language limiting the [proceeds] exemption to those circumstances in which the homestead claimant plans to buy another home").

3

## DISCUSSION

*A. The Best Interests of Creditors Test*

Section 1325(a)(4) of the Bankruptcy Code requires as a condition to both plan confirmation and plan modification that chapter 13 debtors pay unsecured creditors at least the amount they would receive if the estate were liquidated in chapter 7. 11 U.S.C. §§ 1325(a)(4), 1329(b). To determine whether a plan modification satisfies this requirement, the court must consider what a hypothetical liquidation of non-exempt property of the estate would bring "as of the effective date of the plan." 11 U.S.C. § 1325(a)(4).

**1. What is the "Effective Date of the Plan" for Purposes of Section 1325(a)(4)?**

When dealing with plan modifications, courts are divided about whether the "effective date of the plan" refers to the effective date of the original plan or the date of the modified plan. Judge Robert Jones of this district addressed this issue in *In re Moran,* 2012 Bankr. LEXIS 4426 (Bankr. N.D. Tex. 2012). After analyzing each position, Judge Jones adopted the majority view that the "effective date of the plan" for purposes of section 1325(a)(4) is the date of the modified plan. *Id.* at *10. This court agrees with Judge Jones and follows *Moran* for the reasons stated in that decision. Consequently, the court must determine whether the liquidation test is satisfied as of the date of the debtors' modified plan.

**2. Would the Homestead Proceeds be Subject to Distribution in a Chapter 7?**

Only property that could be liquidated to pay creditors in a chapter 7—that is, non-exempt property of the estate—need be considered in the hypothetical liquidation test. *See, Id.* at *12 (failure to use the non-exempt portion of an asset to fund a plan modification results in failure to satisfy section 1325(a)(4)); 11 U.S.C. § 1325(a)(4)(only property that would be

4

distributed under a plan need be valued); 11 U.S.C. § 522(c)(exempt property is not liable for most pre-petition debts). So, the court must consider whether the proceeds from the sale of the homestead are non-exempt property of the estate as of the date of the modified plan.

Section 541(a) of the Bankruptcy Code provides that property of the estate includes all legal or equitable interests in property held by the debtors as of the commencement of the case, including all proceeds from such property. 11 U.S.C. § 541(a)(1), (6). In a chapter 13 case, property of the estate includes all of the assets described in section 541 plus the same kinds of assets acquired by the debtor *after* the commencement of the case. 11 U.S.C. § 1306. Although all property of the estate vests in the debtor upon confirmation of a chapter 13 plan, this court has held that the estate continues to exist and, as such, assets acquired by the debtor post-petition are property of the estate. *In re Hymond*, 2012 Bankr. LEXIS 5861, *8-11 (Bankr. N.D. Tex. 2012).

Initially, the proceeds from the sale of the homestead fall under the definition of property of the estate because (1) they are the proceeds of the homestead, an asset held as of the commencement of the case, or (2) the proceeds themselves are an asset acquired by the debtors post-petition. Nevertheless, the debtors argue that the sale proceeds are not property of the estate because they derive from an exempt asset that was removed from the estate when the homestead exemption became final.

There is no question that the homestead was exempt when it was sold by the debtors. As permitted by 11 U.S.C. § 522(b), the debtors elected state exemptions when they filed their bankruptcy petition. The debtors designated their homestead as exempt pursuant to section 41.001(a) of the Texas Property Code. No party objected to the debtors' homestead exemption and, so, that exemption became final. 11 U.S.C. § 522(l); *Taylor v. Freeland & Kronz,* 503 U.S. 638, 643 (1992). Still, the debtors have a problem. Section 41.001(c) of the Texas Property

5

Code provides that when a Texas homeowner sells his homestead, the proceeds are exempt for only six months from the date of the sale.  Tex. Prop. Code § 41.001(c).  In *In re England,* 975 F.2d 1168, 1174 (5th Cir. 1992), the court held that the purpose of the six-month exemption is to give Texas homeowners the opportunity to reinvest the proceeds in another homestead.  More than six months have passed since the debtors sold their home and they have not reinvested the proceeds in another homestead.  The trustee argues that the debtors' failure to timely reinvest the proceeds has caused them to lose their exempt status.

The debtors argue that because their homestead exemption has become final, the homestead is forever exempt.  They say that no post-petition change in the nature of that asset (here, the conversion of the homestead to cash) can return it to the estate.  Their argument finds support in *Lowe v. Yochem (In re Reed)*, 184 B.R. 733 (Bankr. W.D. Tex. 1995).  In *Reed*, the debtors owned a ranch when they filed their chapter 11 bankruptcy petition.  They claimed the ranch as exempt under Texas law and no party objected to the exemption.  Later, the debtors sold the ranch and, as part of the consideration, received a $375,000 note. The debtors then purchased a new home and pledged the $375,000 note as security for the note on their new home.  Later, the court converted the debtors' case to chapter 7.  After the conversion, the obligors under the $375,000 note paid the note in full. The debtors' attorney disbursed some of the note proceeds to the sellers of the new home, paid other expenses, and transferred the remainder of the note proceeds to the debtors.  The chapter 7 trustee sued the recipients of the note proceeds, arguing that the note was proceeds of the sale of the ranch and, as such, became property of the estate six months after the debtors sold the ranch.

In *Reed*, Judge Leif Clark held that the note was not property of the estate under section 541(a)(6).[3] Judge Clark based his conclusion on section 522(c) of the Bankruptcy Code, which provides that "[u]nless a case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case . . . .." 11 U.S.C. § 522(c). Judge Clark concluded that the practical effect of section 522(c) is to remove the homestead from the bankruptcy estate. *Reed,* 184 B.R. at 738. And, according to Judge Clark, no change in the character of the exempt property can return it to the estate. *Id.* Having concluded that the ranch was forever exempt and thus not property of the estate, he reasoned that the note (being proceeds of the ranch) was likewise not property of the estate. *Id.*

Even though Judge Clark's reasoning is persuasive, this court does not follow it here for several reasons. First, because *Reed* did not involve a chapter 13 case, it did not require Judge Clark to address the question of whether the note constituted property of the estate under section 1306.

Second, this court questions whether the exemption of an asset "removes" it from the estate. The language of the Bankruptcy Code does not compel the conclusion that exempt property "leaves" the estate. Section 541(a) defines property of the estate broadly. Section 541(b) then excludes many kinds of property interests from that broad definition. But, section 541(b) does not purport to exclude from the definition of property of the estate an asset that has been finally exempted.

Depending on one's view, section 522(c) may clarify or confuse the status of property that has been exempted. That section does not define exempt property, but explains the effect of

---

[3] Under section 541(a)(6), the "estate is comprised of all the following property, wherever located and by whomever held:…(6) [p]roceeds, product, offspring, rents, or profits of or from property of the estate…."

7

exemption. It says that property that is exempted is not liable either during or after a bankruptcy case for any pre-petition debt (with certain exceptions that do not apply here) so long as the case is completed and not dismissed. 11 U.S.C. § 522(c). One could, as Judge Clark did, take this language to mean that once property is finally exempted, it is removed from the estate, never to return. Alternatively, one could interpret section 522(c) to mean that exempt property continues to be property of the estate as long as an estate exists, but simply is not available for distribution to unsecured creditors.

The differing interpretations of section 522(c) are significant because if exempt property is removed from the estate, it is difficult to conceive of how it can re-enter the estate even if its character changes.[4] But, if exempt property does not leave the estate, but is merely insulated from creditors' claims, then one can conceive of how post-petition events, such as a change in the nature of the asset, can affect an asset's vulnerability to claims.

This distinction is not merely academic. Several cases in this circuit have addressed debtors' failures to timely reinvest homestead proceeds under Texas law and have concluded that their failure to do so causes the homestead proceeds to lose their exempt status. Yet, none of these cases squarely addresses Judge Clark's analysis of section 522(c) or discusses how removed property can be returned to the estate.

The leading case regarding the impact of section 41.001(c) of the Texas Property Code on bankrupt debtors is *In re Zibman*, 268 F.3d 298 (5th Cir. 2001). In *Zibman* the debtors sold their Texas homestead and kept the cash proceeds. Two months later they filed a chapter 7

---

[4] One could argue that homestead proceeds re-enter the estate via section 1306(a)(1) as property "acquired" by the debtors after the commencement of the case. Of course, that may refute, but does not answer Judge Clark's conclusion that exempted property "is essentially removed from the bankruptcy process." *Reed,* 184 B.R. at 738. Moreover, such an argument only invites the question of whether the proceeds of an exempt pre-petition asset are property that is "acquired" after the commencement of the case.

bankruptcy case and claimed the proceeds as exempt under Texas law. They did not reinvest the proceeds in a new homestead within six months of the sale. When the debtors failed to do so, the chapter 7 trustee argued that the proceeds exemption had expired under Texas law.

As in *Reed*, the bankruptcy and district courts ruled that because the debtors exempted the proceeds when they filed for bankruptcy and no party objected to the exemption, the exemption had become permanent, even though it might have expired under state law. *Id.* at 301, 303. But, the Fifth Circuit reversed, holding that the lower courts had effectively read out of the Texas statute the six-month limitation on the exemption of homestead proceeds. *Id.* at 304. The court held that because the debtors relied on section 41.001 to exempt the home, they must "take the fat with the lean." *Id.* It noted that the Bankruptcy Code does not allow debtors to fragment state law in a way that allows them a benefit they would not receive outside of bankruptcy. *Id*. (citing *In re Earnest*, 42 B.R. 395, 399 (Bankr. D. Ore. 1984)). According to the court, the proceeds exemption was enacted to give debtors a period of time to invest in another homestead, not to indefinitely protect the proceeds themselves. *Id.* at 305 (citing *In re England*, 975 F.2d 1168, 1174-75 (5th Cir. 1992)).

The Fifth Circuit reached the same result in *Studensky v. Morgan (In re Morgan)*, 481 Fed. App. 183 (5th Cir. 2012). There, the debtor filed a chapter 7 petition but did not claim his homestead as exempt. After filing bankruptcy, he sold his homestead and used the proceeds to pay his brother, who claimed a lien on the homestead. When the trustee learned of the payment, he contested the brother's lien and demanded return of the proceeds. In response to the trustee's demand, the debtor, relying on *Reed*, amended his exemptions to claim the proceeds as exempt under section 41.001(c). The trustee objected to the exemption, arguing that the proceeds were not exempt because more than six months had passed since the sale of the home. The bankruptcy

9

court and district court held for the debtor, but the Fifth Circuit reversed. *Id.* at 184, 186-187. In doing so, the court did not overrule *Reed*, but distinguished it by noting that the debtor in *Morgan* never claimed his homestead as exempt, but instead only claimed the proceeds as exempt. *Id.* at 185-186. The court then followed *Zibman* and held that the exemption of the proceeds was subject to the time limitation under Texas law. *Id.* at 187.

Even though the Fifth Circuit has not expressly rejected *Reed*, at least one court has held that the effect of *Zibman* is to do just that. In *Frost v. Veigelahn (In re Frost)*, 2012 U.S. Dist. LEXIS 103268 (W.D. Tex. 2012), the debtor filed a chapter 13 case and claimed his homestead as exempt under Texas law. He later sought permission to sell the homestead and retain the proceeds. The trustee objected to the motion to the extent that the debtor purported to retain the proceeds for more than six months without using them to acquire a new homestead. The bankruptcy court ruled for the trustee, holding that the sale proceeds initially would be exempt, but would only remain so if the debtor reinvested the proceeds in a new homestead within six months. *Id.* at *3. In his appeal to the district court, the debtor relied on *Reed*, arguing that because the homestead was exempt, it could not be brought back into the estate as proceeds. The district court affirmed the bankruptcy court's ruling. In doing so, it concluded that in *Zibman*, the Fifth Circuit had rejected *Reed's* approach. *Id.* at *7-8.

In a case similar to the one before this court, a bankruptcy court also found *Zibman* to be controlling. In *In re Zavala*, 366 B.R. 643 (Bankr. W.D. Tex. 2007), the debtors filed under chapter 13, exempted their homestead, and then sold it. Eleven months after the sale, the trustee, relying on *Zibman*, moved to modify the debtors' plan to require them to pay unsecured creditors with the remaining sale proceeds. The debtors argued *Zibman* was distinguishable because in *Zibman* the debtors sold their house before filing bankruptcy, thus creating pre-petition proceeds

10

that entered the estate subject to a time limitation under section 41.001(c). But, the Zavalas sold their homestead after filing bankruptcy, thus entering the case with an exemption in the homestead itself, which was not subject to that limitation. The court found the distinction to be one without a difference, effectively holding that, although the homestead proceeds were initially exempt, they lost their exempt status when the debtors failed to purchase a new homestead within six months. *Id.* at 653.

Of the foregoing cases, only the district court in *Frost* specifically rejected Judge Clark's analysis in *Reed.* Even there, however, the court did not explain why *Reed* was wrong, but merely stated that in *Zibman* the Fifth Circuit rejected *Reed's* approach. That rejection, if it occurred at all, necessarily derived from shifting the analysis from section 522(c) to 522(b)(3)(A). That section allows debtors to exempt "any property that is exempt under . . . State or local law that is applicable on the date of the filing of the petition . . .." *Id.* As *Zibman* notes, nothing in section 522(b) limits a state's power to restrict the scope of its exemptions. *Zibman* at 302 (citing *Owen v. Owen,* 500 U.S. 305, 308 (1991)). So, according to *Zibman,* once a debtor elects Texas's homestead law, he elects the entirety of that law, not just that portion that benefits him. *Id.* at 304.

So, while *Zibman* and its progeny may reject *Reed's* approach, they do not address its fundamental tenet, that being that once property is finally exempted under the Bankruptcy Code, that property leaves the estate, never to return. In this court's opinion, *Zibman,* by which this court is bound, must be reconciled with section 522(c) by a two-step analytical process. First, one must conclude that exempt property is not withdrawn from the estate, but remains property of the estate insulated from the claims of creditors for as long as the asset enjoys exempt status under state law. Second, one must conclude, as the court did in *In re Davis,* 170 F.3d 475, 481-

11

3 (5th Cir. 1999), that section 522(c) does not preempt Texas's homestead laws. In a chapter 13 case, the effect of this construction is to place the debtor in the same position with regard to exemptions as he would have been in had he not filed for bankruptcy. The pendency of the bankruptcy case neither expands nor reduces his exemption rights. So, once an asset no longer enjoys exempt status under state law, that asset becomes vulnerable to claims and, hence, distributable to creditors.

Here, it has been more than six months since the debtors sold their homestead. Accordingly, the homestead proceeds were non-exempt property of the estate as of the date of the debtors' plan modification and, as such, are necessarily part of any hypothetical liquidation analysis under the best interests test. Because the plan fails to provide for the distribution of the sale proceeds to creditors, it does not comply with section 1325(a)(4).

### B. The Res Judicata Effect of the Sale Order

The debtors alternatively argue that any objection to the exemption of the proceeds should have been raised when they sought authority from this court to sell the homestead and receive the proceeds as their exempt equity. Because no party objected to the motion and the order approving the sale is now final, the debtors argue that any such objection is barred by the doctrine of *res judicata*.[5] To prevail on this argument, the debtors must show that (1) the parties are identical, (2) the prior order was rendered by a court of competent jurisdiction, (3) the order was final and on the merits, and (4) the same cause of action is involved. *Republic Supply Co. v.*

---

[5] The debtors also argue that the order confirming their original plan precludes the trustee from now objecting to the homestead exemption. The debtors point to several cases in which courts have employed *res judicata* to deny debtors the right to modify their exemptions after plan confirmation. They argue that the same logic should bar creditors from objecting to exemptions that were claimed by the debtors as of the date of plan confirmation. The cases relied upon by the debtors are inapposite. Here, the trustee does not challenge the debtors' original homestead exemption, but argues that the same statute that gave rise to the exemption has caused it to expire.

*Shoaf*, 815 F.2d 1046, 1051 (5th Cir. 1987). The parties concede that the first three of these requirements are met, but disagree as to whether the plan modification and the order approving the sale involve the same cause of action.

To determine whether this matter involves the same cause of action as the sale order, the court must apply a transactional test. *Id.* at 1053. In that test the important inquiry is whether the two causes of action are based on the same "nucleus of operative facts." *Travelers Ins. Co. v. St. Jude Hosp.,* 37 F.3d 193, 195 (5th Cir. 1994). If two causes of action arise from the same transaction, *res judicata* bars not only any claim that was adjudicated in a prior action, but any claim that could have been adjudicated. *Id.* In effect, the first judgment extinguishes all rights between the parties with respect to "all or any part of the transaction…out of which the action arose." *Id.*

The sale motion and order implicated several matters including (1) the debtors' request to sell the homestead, (2) the application to apply the proceeds to certain obligations and expenses, and (3) the debtors' claim to the exempt equity. The debtors phrased the last of these claims as follows in their sale motion:

> 6. Debtor(s) have claimed **all the equity in the property** as exempt with respect to the subject property. Debtor(s) expect to realize **approximately $64,000, less closing costs and fees** profit [sic] from the sale of the property. Debtor(s) propose that **all of the equity in the property** be distributed to the Debtor(s) from the sale proceeds with any remaining balance being paid to the unsecured creditors. (emphasis in original).

No party objected to the motion, but because the debtors and their mortgage lender disagreed on the amount owed on the mortgage, they negotiated a form of order, which the trustee approved and this court signed. The order has become final. That order provides in pertinent part:

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** that the remaining proceeds of sale, following payment of the enumerated items in the foregoing paragraph, be disbursed to the Debtor(s) as their exempt equity in the home.

Each side now points to these provisions as conclusive proof that it should prevail. Ultimately, the question boils down to the placement of burdens. The trustee contends that it was the debtors' burden to disclose their intent to exempt the proceeds beyond section 41.001(c)'s time limitation. The debtors argue that it was the trustee's burden to object to their retention of the proceeds beyond the time limitation.

Although a persuasive case can be made for either side, the facts here favor the trustee. In this regard, *Republic Supply Co. v. Shoaf* is instructive. In *Shoaf,* a chapter 11 debtor confirmed a plan that purported to release creditors' claims against guarantors of the debtor's obligations. Republic, a beneficiary of one such guaranty, believed that this provision was unenforceable but failed to object to the plan. Later, Republic sued Shoaf, one of the guarantors who was released under the plan. Shoaf contended that Republic's claims were barred by *res judicata*. The Fifth Circuit agreed. In addressing whether Republic's cause of action arose out of the same transaction that was the subject of the bankruptcy court's order confirming the plan, the court ruled as follows:

> The only question, under the transactional test, that we must consider is whether the cause of action that Republic now asserts arose out of the same transaction that was the subject of the bankruptcy court's order that relieved Shoaf of liability. The bankruptcy court's order makes it indisputably clear that it did. "[The] release shall include the release of any guarantees given to any creditor of the debtor . . .."

*Id.* at 1054.

*Shoaf* suggests that a key ingredient of the transactional test in circumstances such as these is the debtor's disclosure of his intent to take an act that arguably deviates from controlling

14

law.  The clarity of the order in *Shoaf* is in sharp contrast to the vagueness of the order in this case.  Here the order approving the sale merely ordered that the sale proceeds "be disbursed to the Debtor(s) as their exempt equity in the home."  It did not order that the equity would remain exempt for more than six months after the date of sale.  Indeed, neither the motion nor the order disclosed any such intent by the debtors.

Moreover, creditors might also have been confused by that portion of the motion that said that "Debtor(s) propose that all of the equity in the property be distributed to the Debtors(s) from the sale proceeds *with any remaining balance being paid to unsecured creditors*." (emphasis added).  Although the court construes this language as a typographical error, it is possible that creditors could have construed it as the debtors' intent to distribute at least part of the sales proceeds to unsecured creditors.

Under these facts, any creditor reviewing the motion to sell could have concluded that the debtors intended to retain the proceeds subject to the time limitation of section 41.001(c) or, perhaps, to abandon the exemption as to some of the proceeds.  If the debtors intended to retain all of the proceeds beyond the time limitation of section 41.001(c), they should have made that intention clear in their motion and the order they negotiated with the trustee.  Because they did not do so, the trustee's objection to the plan modification cannot be said to involve the same transaction.  Consequently, the trustee's objection is not barred by *res judicata.*

### CONCLUSION

For the reasons stated herein, the court finds that the debtors' proposed plan modification does not satisfy section 1325(a)(4) and, as such, must be denied.

###END OF MEMORANDUM OPINION###